```
                    UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )     Chapter 7
ROBERT K. MIELL,                )
                                )     Bankruptcy No. 09-01500
     Debtor.                    )
```

### ORDER RE: MOTION TO SELL REAL ESTATE

This matter came before the undersigned on February 25, 2010 on Trustee's Motion to Sell Real Estate Free & Clear of Liens and Encumbrances (Doc. 811). Attorney Jeffrey Taylor appeared with Trustee Renee Hanrahan. Bank Iowa was represented by Attorney Wes Huisinga. Attorney Trevor Anderson appeared for Debtor Robert Miell. The Court held the record open in order to allow deposition testimony by Debtor. The transcript from Debtor's March 2, 2010 deposition was filed of record on March 8, 2010. The record is now closed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N).

### STATEMENT OF THE CASE

Trustee moves to sell the portfolio of real property which is collateral for mortgages held by Bank Iowa. Bank Iowa, as purchaser, will pay $1.9 million plus a surcharge to the bankruptcy estate of $100,000. Debtor objects to the sale. He contends the real property has an aggregate fair market value of $4,250,000.

### FINDINGS OF FACT

Debtor filed this voluntary case on May 28, 2009. Trustee Renee Hanrahan was appointed Chapter 11 Trustee on June 9, 2009 and, after conversion, Chapter 7 Trustee on October 9, 2009. Debtor is currently incarcerated pending sentencing on federal criminal charges.

The portfolio of real estate which is collateral for Bank Iowa's mortgage includes four or five multi-family dwellings and approximately 30 single-family dwellings. Most of the mortgages on the individual properties are cross-collateralized by all the properties in the portfolio. Bank Iowa proposes to purchase the entire portfolio for $1.9 million plus $100,000 surcharge to the bankruptcy estate. Trustee and the Bank believe this transaction is the equivalent of a third-party cash bid of $3,278,644, taking

into consideration unpaid property taxes and interest, and other tax consequences, including capital gains.

Trustee has attempted to market the properties to third parties. She has received many inquiries and general solicitations interested in purchasing some or all of the real estate. She has not received any offers which will pay off Bank Iowa's first lien position, property taxes, costs of sale and income taxes. An offer by Development Solutions for these properties proposes to pay approximately $1.6 million for the single-family homes in the portfolio.

The Bank and Trustee have previously entered into a Court-approved agreement (Doc. 650) regarding the Bank's Motion for Relief from Stay (Doc. 162). The agreement provides that the automatic stay will expire on May 11, 2010 if Trustee fails to consummate a sale of the collateral prior to that date. Trustee testified that the bankruptcy estate will not have the benefit of the $100,000 surcharge if no sale occurs before that date. She believes the sale to Bank Iowa is in the best interests of the estate.

Debtor objects to the sale to Bank Iowa. He believes it is likely that other buyers would be willing to offer more than the equivalent of $3,278,644. Debtor testified that the aggregate fair market value of the properties is $4,250,000 based on appraisals performed between 2003 and 2005. He believes the value may well be higher now because the median home value in Cedar Rapids has increased since that time. Debtor also testified that he was informed by articles in the Cedar Rapids Gazette that there is currently high demand for moderately-priced single-family homes in Cedar Rapids. He believes the homes could be sold individually within 90 days.

Debtor stated that when he bought large blocks of property, he would expect the price to be discounted by 25% to 40%. This is not the case if the homes are sold individually. Debtor blames Trustee and other property managers for the lack of care and maintenance of the homes which makes them less marketable and less profitable. He bases this on photos he has received from a former employee.

Trustee testified that, even if previous appraisals or assessed values were higher that $3.27 million, she has received no offers to purchase the properties for higher amounts. Because the debts are cross-collateralized, attempting to sell the homes individually is problematic. Even if some of them could be sold before the May 11 deadline, Bank Iowa's lien would not be fully

satisfied. In addition, the costs of sale and capital gains implications would be detrimental to the estate.

Trustee also argues that Debtor does not have standing to object to the sale. She asserts that under no set of circumstances will Debtor receive any funds from the sale of property of the estate. All estate funds will be depleted by payments of secured and priority claims and distributions to unsecured creditors, if any.

## CONCLUSIONS OF LAW

The sale of a bankruptcy estate's property is subject to court approval under 11 U.S.C. § 363(b). In re Payless Cashways, Inc., 281 B.R. 648, 653 (B.A.P. 8th Cir. 2002). A bankruptcy court has considerable discretion in approving asset sales. In Re Food Barn Stores, Inc., 107 F.3d 558, 565 (8th Cir. 1997); In re Farmland Indus., Inc., 289 B.R. 122, 126 (B.A.P. 8th Cir. 2003). Courts have "ample latitude to strike a satisfactory balance between the relevant factors of fairness, finality, integrity, and maximization of assets. [They] must be accorded sufficient discretion to decide the truly close cases as best [they] can in view of these competing considerations." Food Barn Stores, 107 F.3d at 566 (internal quotation marks and citations omitted); In re Wintz Cos., 219 F.3d 807, 812 (8th Cir. 2000).

Ultimately, the court must decide whether the proposed sale is in the best interests of the estate. Farmland Indus., 289 B.R. at 126; In re Staufens Music House, Inc., 213 B.R. 842, 844 (Bankr. E.D. Mo. 1997). "A sale of estate property outside the ordinary course of business is in the best interest of the estate and may be approved if it is for a fair and reasonable price and in good faith." In re CRI Inc., 2006 WL 2999988, at *2 (Bankr. N.D. Iowa Sep. 13, 2006), citing In re LeBlanc Inc., 299 B.R. 546, 552 (Bankr. N.D. Iowa 2003).

## ANALYSIS

The Court has reviewed the entire record in this case, including relevant documents presented by the parties as well as Debtor's deposition testimony. Trustee has not received any offers for purchase of Bank Iowa's collateral real estate which would generate increased revenue. This is consistent with the state of the local and national economies. The cross-collateralization provisions in Bank Iowa's mortgages and capital gains tax effects additionally complicate the sale process for the bankruptcy estate.

In the absence of competing offers, and in light of the cash value of Bank Iowa's offer, the Court concludes that the proposed sale is in good faith and for a fair and reasonable price. Debtor believes more marketing efforts could bring a better return for the estate. This belief, however, is not supported by supporting data. In addition, Debtor's arguments fail to take into account Trustee's need to meet the May 11 deadline, the effect of the cross-collateralization of debt, and the amount of capital gains and other taxes and costs on the bottom line.

Accepting Debtor's valuation of $4,250,000, the cash value of Bank Iowa's purchase price, $3,278,644, is a discount of approximately 23% from the full value. This is below the 25% to 40% discount Debtor testified he would have expected if he were to buy a large block of property. The bankruptcy estate can benefit from the $100,000 surcharge at this time, at least part of which will be lost if no sale is finalized by May 11, 2010. The Court finds that approval of the sale is appropriate. The sale price is fair and reasonable and the terms of the sale are in the best interests of the bankruptcy estate.

**WHEREFORE**, Trustee's Motion to Sell Real Estate Free & Clear of Liens and Encumbrances (Doc. 811) is GRANTED.

**FURTHER**, Bank Iowa shall submit an appropriate order implementing this ruling on or before March 24, 2010.

DATED AND ENTERED: March 10, 2010

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE