IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| ROBERT K. MIELL, ) | |
| ) | Bankruptcy No. 09-01500 |
| Debtor. ) | |

**ORDER RE: TRUSTEE'S OBJECTIONS TO PROOFS
OF CLAIMS (#18 and #19)**

This matter came before the undersigned for hearing on August 9, 2011. Trustee Renee Hanrahan appeared with Attorney Jeffrey Taylor. Creditors Bret Emig and Tabitha Emig appeared without counsel. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

**STATEMENT OF THE CASE**

Trustee filed objections to multiple claims. Creditors Bret Emig and Tabitha Emig filed objections to disallowance of their claims. Tabitha Emig asserts she is entitled to additional vacation pay. Bret Emig, whose claim was completely disallowed, asserts he is entitled to wages, vacation pay, health care premiums and severance pay.

**FINDINGS OF FACT**

Trustee's Objections to Proofs of Claims (Doc. 1174) disallowed Bret Emig's Claim #18 in its entirety for lack of supporting documents. At the hearing, Trustee conceded that Mr. Emig is entitled to pay for: a) 35 hours he worked which remained unpaid, and b) 31 hours of vacation pay. At $14.00 per hour, the total Trustee agrees to pay Mr. Emig is $924.00. Claim #18 asserts a total amount due of $9,856.80, of which $2,730 is entitled to priority under § 507(a)(4).

Trustee allowed and paid Tabitha Emig's claim in the amount of $1,656 which includes 19 hours of regular time and 50 hours of vacation time. Her hourly rate is $24.00. Mrs. Emig's Claim #19 asserts a total amount due of $10,056.00, of which $4,296 is entitled to priority under § 507(a)(4).

Bret Emig testified that he is entitled to an additional three weeks of vacation pay which were mistakenly not included on his paystub in March 2009, his employment anniversary date. His Exhibits A and B are paystubs from 2008 and 2009, respectively. He points out that 80 hours of vacation time were added to his paystub on March 3, 2008. Mr. Emig stated that through a former employee's error, his paystubs in March 2009 fail to reflect the three weeks of vacation time he should have been allotted at that time. Both Bret Emig and Tabitha Emig testified that when vacation was added to their paystubs, it was for the previous year, not the subsequent year.[1] Thus, in addition to payment for the 31 hours of vacation time which Trustee concedes should be allowed, Mr. Emig is requesting payment for an additional 120 hours, or three weeks of vacation time. He testified that his last paystub should state that 151 hours of vacation was available, rather than 31 hours.

As set out in Mr. Emig's objection to Trustee's disallowance of his claim, he also asserts he is entitled to severance pay of one week for each of the eight years he worked. He testified that Mr. Miell told him to make a claim for that amount, but he has no written records to support the claim. Additionally, Mr. Emig asserts he is entitled to be compensated for six months of health care premiums which cost $348 per month. He further testified that Mr. Miell agreed to pay these amounts, but did not put it in writing. Trustee's Exhibit 4 shows Mr. Emig and two other employees were each paid $1,000 by Debtor on June 1, 2009 for health insurance.

Tabitha Emig presented two handwritten documents, signed by Debtor Robert Miell, as Exhibits 1 and 2. These show that as of May 26, 2008 her salary was $40,000 per year with a 45-hour week and she was entitled to three weeks of vacation. As of May 22, 2009, her salary increased to $50,000 per year and all other terms remained the same. Mrs. Emig testified that she was entitled to a prorated amount of the vacation pay which would have come due on July 2009, her employment anniversary date. She asserts that she was earning her vacation pay throughout the prior year, and would have received 120 hours of vacation time in

---

1 Bret Emig initially testified to the contrary, but corrected himself after having time to think about it.

2

July 2009, if she hadn't been terminated by Trustee in June 2009. Mrs. Emig withdrew her request for severance pay. She calculates that she is entitled to payment of $24.00 per hour for 110 hours of vacation pay, or $2,640.

## CONCLUSIONS OF LAW

Generally, claims for wages under an employment agreement are unsecured claims subject to a one-year cap pursuant to § 502(b)(7). In re Cincinnati Cordage and Paper Co., 271 B.R. 264, 269 (Bankr. S.D. Ohio 2001). This section "is the means by which Congress seeks to protect bankrupt estates from large, sometimes exorbitant claims by employees for damages 'resulting from the termination of an employment contract.'" In re Dornier Aviation, Inc., 305 B.R. 650, 653 (E.D. Va. 2004). It caps claims for amounts that become due by virtue of termination of employment, such as severance pay. Id. at 654. It does not apply to claims for earned but unpaid compensation such as vacation pay. Id.

The Bankruptcy Code separately gives priority to certain wage claims in § 507(a). They are fourth in priority under that section, which states, in pertinent part:

> (4) Fourth, allowed unsecured claims, but only to the extent of $10,950 for each individual . . . earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for—
>
> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual;

11 U.S.C. § 507(a)(4)(A) (2009).[2] In addition, although not requested in this case, certain wages for services rendered post-petition are allowed as administrative expenses under § 503(b)(1)(A) which receive first priority under § 507(a)(1).

---

[2] After Debtor filed his bankruptcy petition herein, the dollar limit in § 507(a)(4) increased from $10,950 to $11,725, effective for cases commenced after April 1, 2010. The amounts of priority claims are adjusted every three years. See 11 U.S.C. § 104.

3

The principal function of § 507(a)(4) is to ensure employees will be paid for their last days of work. In re Northwest Engineering Co., 863 F.2d 1313, 1315 (7th Cir. 1988). "If employees were treated in all respects as unsecured creditors, they would be inclined to desert a leaky ship, speeding up the firm's collapse." Id. In Northwest Engineering, Judge Easterbrook determined that vacation pay is "earned" continuously under § 507(a)(4). Id. at 1316. The priority granted under § 507(a)(4) is for 180 days' worth of vacation pay.[3] Id. at 1319.

The court in In re Ground Round, Inc., 316 B.R. 423, 427 (Bankr. D. Mass. 2004), noted that Northwest Engineering is one of the rare circuit cases on point. It agreed that vacation pay is earned from day to day over the year. Id. at 428. Thus, employees are entitled to priority only for vacation pay accruing during the time period set out in § 507(a)(4) and only up to the maximum dollar limit. Id. "The remainder of their unpaid vacation pay will be treated as general unsecured claims." Id.; see also In re AcoustiSeal, Inc., 290 B.R. 354, 363 (Bankr. W.D. Mo. 2003) (stating prepetition vacation pay earned within the time limit may be accorded priority status up to the dollar limit allowed); In re Mickelson, 192 B.R. 516, 519 (Bankr. D.N.D. 1996) (noting that claims falling outside the time period are denied priority and treated as general unsecured claims).

## ANALYSIS

Based on the record presented, the Court concludes that Bret Emig has failed to prove he is entitled to severance pay or health care premiums. He offered nothing in writing to prove these claims. Mr. Emig's testimony regarding oral agreements with Debtor regarding severance pay and health care premium payments does not convince the Court that he is entitled to the amounts he claims.

In contrast, Mr. Emig has proved that he is entitled to a total of 181 hours of earned but unused vacation time, at his hourly wage amount of $14.00, or a total of $2,534. This arises from the three weeks of vacation

---

3 The version of § 507(a) applicable in Northwest Engineering was numbered § 507(a)(3), the number of days was 90, and the dollar limit was $2,000. In 2005, BAPCPA amended § 507(a), changing "90 days" to "180 days" and redesignating par. (3) as par. (4).

time Mr. Emig earned but was not allotted for the year ending March 2009, i.e., 120 hours. As Trustee concedes, he was also owed 31 additional hours as shown on his final pay stub. The Court further calculates that Mr. Emig is entitled to a prorated amount for vacation earned on a day-to-day basis during the three months between March and June 2009, or 30 additional hours. These three entitlements to vacation pay for 120 hours from 2009, 31 hours accrued but unpaid, and 30 hours prorated for the last three months of his employment, equal 181 total hours of vacation time.

Of this amount, 60 hours of vacation pay is attributable to the 180 days prior to the termination of his employment and is entitled to priority status under § 507(a)(4)(A), in the amount of $840 (60 hours x $14/hour). Trustee also concedes Mr. Emig is entitled to payment for 35 hours of work prepetition, or $490, as a priority claim, making his total priority wage claim $1,330 ($840 + 490). The remainder of Mr. Emig's claim for vacation pay, or $1,694 ($2,534 – 840), is a general unsecured claim.

Tabitha Emig has also met her burden to prove she is entitled to vacation time for the year ending July 2009, prorated to her termination date in early June 2009, or 110 hours at her hourly wage of $24.00. Trustee has already paid Mrs. Emig for 50 hours of vacation time and 19 hours of regular prepetition wages as a priority claim in the amount of $1,656. She should be paid for another 10 hours of vacation time (or a total of 60 hours earned during the 180 days prepetition) as a priority claim, or $240. The remainder of her claim based on vacation time is $2,400 (100 hours x $24.00/hr.), which is a general unsecured claim.

**WHEREFORE**, Trustee's Objections to Proofs of Claims (#18 and #19) are GRANTED IN PART AND DENIED IN PART.

**FURTHER**, Creditor Bret Emig's Claim #18 is allowed in the amounts of $1,330 as a priority wage claim under § 507(a)(4)(A), and $1,694 as a general unsecured claim.

**FURTHER**, Creditor Tabitha Emig's Claim #19 is allowed in the total amount of $1,896 as a priority wage claim under § 507(a)(4)(A), of which

$240 remains unpaid.   The remainder of her claim, or $2,400, is allowed as a general unsecured claim.

Dated and Entered: August 26, 2011

PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE

6